IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DENNY L. NEWMAN,

    Plaintiff,

v.                                  CASE NO. 5:15-cv-102-RH-GRJ

MOSES IZUEGBU, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants Dr. Moses Izuegbu, M.D., Matthew McGuffin and Expedito Salvador's Motion to Dismiss. ECF No. 62. Plaintiff filed a response to Defendants' motion on November 4, 2015. (ECF No. 67.)  With the Court's permission, Defendants filed a Reply in Support of their Motion to Dismiss on November 12, 2015. (ECF No. 70.) Plaintiff then filed without seeking leave from the Court a second response to Defendants' motion to dismiss. ECF No. 71. Defendants' motion is, therefore, now ripe for review. For the following reasons, it is **RECOMMENDED** that the motion to dismiss be **GRANTED**.

### I. Background

Plaintiff, an inmate in the custody of the Florida Department of

Corrections at the Calhoun Correctional Institution ("CCI"), filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging Eighth Amendment violations stemming from the treatment, or lack thereof, that he has received for various medical issues. (ECF No. 10 at 7.)

In his amended complaint, Plaintiff alleges on March 20, 2015, he had severe abdomenal issues, nausea, and pain, and was delayed medical treatment until later that day. (*Id.* at 5.)[1] Plaintiff states that when he was finally sent to medical he informed Defendant Salvador of his medical history, including colitis, pancreatitis, stroke, high blood pressure, and diabetes. (*Id.*) Defendant Salvador contemplated putting Plaintiff in the hospital due to his chest and stomach pain, but then decided to put Plaintiff in the infirmary instead. During Plaintiff's stay in the infirmary Plaintiff says Salvador only ordered a simple saline IV and did not order an EKG or prescribe him Tylenol. (*Id.*)

The following day, when Dr. Izuegbu checked on Plaintiff, Plaintiff informed Dr. Izuegbu of his various symptoms, including violent abdominal pain in multiple spots, vomiting, pain in his genitals, and trouble urinating. (*Id.* at 12.) According to Plaintiff, Dr. Izuegbu declined to order tests that

---

[1] Plaintiff's amended complaint, including its allegations and request for relief, is largely indecipherable.

day. (*Id.*) A few days later Dr. Izuebgu ordered a blood test and an ultrasound. (*Id.*) Plaintiff says that the nurses waited too long to draw his blood, refused to give him nausea medication, and only gave him limited Tylenol. (*Id.*)

Plaintiff claims that although his condition worsened on April 3, 2015, facility medical staff still did nothing. Specifically, Plaintiff says he had stroke-like symptoms, including weakness on his left side, vision trouble, sweatiness, and chest tightness. (*Id.* at 8.) Plaintiff informed staff of his symptoms but they delayed treatment and instead sent various people to check on him every twenty minutes or so. (*Id.*) Defendant McGruff finally took Plaintiff's blood pressure three times, which was high each time. (*Id.*)

Defendant McGruff allegedly told Plaintiff that they would not send him to the hospital because he could not hold down medication and instead said he would call the doctor. (*Id.*) Defendant McGruff did not return that night but another nurse came checked on Plaintiff midway through the night and took Plaintiff's blood pressure. (*Id.*) Defendant Salvador then checked on Plaintiff the following day but did not order an EKG or send Plaintiff to the hospital. (*Id.* at 8–9.)

Plaintiff alleges that this lack of treatment has subjected him to cruel

and unusual punishment in violation of the Eighth Amendment. (*Id.* at 7.) Plaintiff requests all relief the Court deems just and proper, financial or otherwise. (*Id.*)[2]

## II.  Defendants' Motion to Dismiss

Defendants request the Court to dismiss Plaintiff's amended complaint because Plaintiff failed to exhaust his administrative remedies prior to filing his amended complaint as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF No. 62 at 2.) Defendants say that none of Plaintiff's grievance appeals were filed in compliance with the process as outlined in the FDOC grievance procedure.

In support of their argument, Defendants have provided a sworn affidavit of Alan McManus, Chief of Policy Management and Inmate Appeals for the FDOC, ECF No. 62-1, a copy of the FDOC's Inmate Grievance Procedure, ECF No. 62-2, and copies of Plaintiff's five grievance appeals, ECF No. 62-3. Mr. McManus' affidavit explains the proper grievance procedure and asserts that Plaintiff was aware of the

---

[2] On August 24, 2015, Plaintiff filed an amended motion for temporary restraining order/preliminary injunction. (ECF No. 49.) The Court recommended that Plaintiff's amended motion for temporary restraining order be denied, ECF No. 61, and the district court judge adopted the report and recommendation on November 2, 2015, reasoning that Plaintiff failed to show a substantial likelihood of success on the merits. (ECF No. 66.)

proper grievance procedure. (ECF No. 62-1.) Additionally, a review of Plaintiff's five grievance appeals disclose, as Defendants say, that all five grievances appeals were returned unprocessed for failure to comply with proper grievance procedures. (ECF No. 62-3.)

Grievance number 15-6-09659 was returned without action on March 27, 2015. The response noted that Plaintiff must first submit his grievance at the appropriate level at the institution and that Plaintiff did not do so or did not provide the appeals office with a copy of that grievance, nor did Plaintiff provide a valid or acceptable reason for not following the rule. (*Id.* at 4.)

Grievance number 15-6-10703 was returned without action on April 6, 2015. The response explained that Plaintiff did not provide the appeals office with a copy of his formal grievance filed at the institutional level or the reason provided for by-passing that level of the grievance procedure was not acceptable. (*Id.* at 5.)

Grievance number 15-6-12951 was returned on April 22, 2015. It stated that Plaintiff used multiple copies of grievance forms rather than attachments as continuation sheets in accordance with grievance procedures. (*Id.* at 7.)

Grievance number 15-6-17291 was returned on May 27, 2015. The response disclosed that Plaintiff did not provide the appeals office with a copy of the formal grievance filed at the institutional level or the reason that he provided for by-passing that level of the grievance procedure was not acceptable. (*Id.* at 10.)

Finally, grievance number 15-5-23172 was returned on July 9, 2015. The response again noted that Plaintiff did not provide the appeals office with a copy of the formal grievance filed at the institutional level or the reason that he provided for by-passing that level of the grievance procedure was not acceptable. (*Id.* at 12.)

Defendants also point out that although Plaintiff's amended complaint filed on May 27, 2015, states that he has "over exhausted all administrative remedies," his Amended Motion for Temporary Restraining Order filed on August 24, 2015, admits that he is still waiting for a response to his grievances. (ECF No. 49 at 2.) Thus, because Plaintiff has not exhausted his administrative remedies in accordance with the PLRA, Defendants say that Plaintiff's amended complaint should be dismissed.

In response, Plaintiff argues that he has indeed exhausted the

grievance process. (ECF No. 67 at 2.)³ To support his assertion, Plaintiff attached copies of several grievances and responses. With the Court's permission, Defendants filed a reply addressing the grievances and responses provided in Plaintiff's response. (ECF No. 70.)

Turning to the documents Plaintiff filed, the first document is a copy of a document titled "Inmate Request," in which a box marked "informal grievance" is checked. (ECF No. 67 at 17.) The response includes the note that Plaintiff's requests and grievances were answered on various dates and that documentation "clearly indicate[s] appropriate treatment was rendered." (*Id.*)  As Defendants point out, Plaintiff offers no explanation as to how this "inmate request" bears on the issue of his failure to properly exhaust through the appropriate grievance channels.

The second document Plaintiff attached is a copy of grievance number 1504-105-056, provided for mailing on April 23, 2015. (ECF No. 67 at 10.) This formal grievance was denied on May 6, 2015, because medical records and documentation revealed that Plaintiff was being treated and monitored at a satisfactory level of care and he was not being denied medical treatment. (*Id.* at 11.) The institutional response notes that if

---

³ Like all of Plaintiff's other filings, Plaintiff's response is largely indecipherable.

Plaintiff is not satisfied with the response, he may obtain further administrative review of his complaint by filing an appeal. (*Id.*) Although Plaintiff had the option of obtaining further administrative review by filing an appeal, there is no evidence showing that Plaintiff filed such an appeal.

The third document is grievance number 15-6-29135 Plaintiff submitted for mailing on April 29, 2015 to the appeals office. (ECF No. 67 at 7.) The grievance appeals office received the grievance on August 10, 2015. (*Id.*) The appeals office returned the appeal without action because Plaintiff failed to provide the office with a copy of the formal grievance filed at the institutional level or the reason Plaintiff provided for by-passing that level of the procedure was not acceptable. (*Id.* at 8.)[4]  Defendants say that grievance number 15-6-29135 does not satisfy the requirement for exhausting administrative remedies prior to filing suit because the grievance office did not receive grievance number 15-6-29135 until August 10, 2015, three months *after* Plaintiff filed his complaint in this case on May 11, 2015. (ECF No. 70 at 1–2.)

The fourth document Plaintiff attached is a copy of an "Inmate

---

[4] The response is unclear as to the date it was mailed back to Plaintiff. The Warden, Assistant Warden, or Secretary's Representative signed the response on August 21, 2015, but the mailed/filed with agency clerk stamp notes August 26, 2015. (*Id.*)

Request," which includes a notation that it is an "informal grievance." (ECF No. 67 at 13.) The response was received and returned on May 12, 2015, noting that "[t]his is a sick call issue. Follow protocol to initiate sick call." (*Id.*)[5] Defendants say that this is an "Inmate Request" filed with the medical department of his facility and that Plaintiff offers no explanation how this bears on the issue of his failure to properly exhaust through the proper administrative channels. (ECF No. 70 at 2.)

The fifth document is a copy of formal grievance number 1505-105-016, provided for mailing on May 7, 2015. (*Id.* at 15.) Plaintiff did not include a response to grievance number 1505-105-016. Defendants say that Plaintiff offers no evidence that the grievance was appealed, a necessary requirement for proper exhaustion. (ECF No. 70 at 2–3.)

The sixth document Plaintiff attached is a copy of a response from the appeals office regarding grievance number 15-6-29219, which was denied on September 1, 2015. (ECF No. 67 at 19.) The response does not include any indication as to what was the basis of the underlying grievance or complaint was or when the grievance was filed. The response merely

---

[5] Although the response does not explicitly state that the informal grievance is denied, there is an "X" in the blank following "Based on the above information, your grievance is ___." (*Id.*)

states "[y]our administrative appeal has been reviewed and evaluated. The response that you received at the institutional level has been reviewed and is found to appropriately address the concerns that you raised at the institutional level as well as the Central Office level. Your administrative appeal is denied." (*Id.*) Defendants say that the lack of supporting documentation as to what was the basis of the underlying grievance and the lack of relevant filing dates evidences that this response cannot be used to demonstrate proper exhaustion. (ECF No. 70 at 3.)

The seventh document is a copy of the institutional response to formal grievance number 1508-105-006, which was denied on August 11, 2015. (ECF No. 67 at 21.) The response notes that if Plaintiff is not satisfied with the response he received at the institutional level, he may obtain further administrative review through appeal. (*Id.*) Defendants say that although Plaintiff had the option of obtaining further administrative review by filing an appeal, Plaintiff provides no evidence showing that he indeed filed such an appeal. (ECF No. 70 at 3–4.) Thus, this denial also does not establish proper exhaustion.

After Defendants filed their reply, Plaintiff filed without obtaining leave of court a filing titled "Motion to Add to Motion to Deny Dismissal 12B Add

Statement and Appoint Medical Expert Rule 706." (ECF No. 71.)  While this filing is largely indecipherable like his other filings, Plaintiff appears to argue that although he has filed approximately 40 total medical grievances that demonstrate he has over-exhausted his administrative remedies, most of those grievances are missing.

### III.  Standard of Review

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is considered a matter in abatement under Fed. R. Civ. P. 12 and, thus, is treated like a defense of lack of jurisdiction. *Bryant v. Rich*, 530 F.3d 1368, 1374, 1376 (11th Cir. 2008.)  Accordingly, "[a] district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record." *Singleton v. Dep't of Corrections*, 323 F. App'x 783, 785 (11th Cir. 2009).

### IV.  Discussion

The PLRA requires a prisoner to exhaust all available administrative remedies before filing an action challenging prison conditions. "This requirement is a 'pre-condition to suit' that must be enforced even if the available administrative remedies are 'futile or inadequate.'" *Logue v.*

*Pearson,* No. CV410-240, 2011 U.S. Dist. LEXIS 66950, at *2-3 (S.D. Ga. 2011) (citing *Harris v. Garner,* 190 F.3d 1279, 1285-86 (11th Cir. 2005))*.* Exhaustion is mandatory under the PLRA, and unexhausted claims are not permitted. *Jones v. Bock,* 549 U.S. 199, 211 (2002)*.*

Further, the PLRA's exhaustion requirement contains a procedural default component; prisoners must comply with the applicable deadlines, or good-cause standards for failure to comply, contained in the administrative grievance procedures.  *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005). "'[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating. . . . [T]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024-25 (7th Cir. 2002)).

To exhaust administrative remedies in Florida, a prisoner in FDOC custody must complete the administrative review process established under regulations promulgated by the Secretary of the FDOC. Fla. Stat. Ann. § 944.09(1)(d) ("The department has authority to adopt rules ... to implement its statutory authority. The rules must include rules relating to ...

[g]rievance procedures which shall conform to 42 U.S.C. § 1997e."). Under the administrative review process established by the Secretary of the FDOC, a prisoner must: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Secretary of the FDOC. *Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Fla. Admin. Code Ann. §§ 33-103.001-103.019*).* Once a prisoner has completed this process, he has properly exhausted his administrative remedies. *Id.*

Deciding a motion to dismiss for failure to exhaust administrative remedies requires a two-step process as established in *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* at 1082; *Whatley v. Warden*, ___ F.3d ___, 2015 WL 5568465, at *5 (11th Cir. 2015) (at first *Turner* step, district court must accept plaintiff's facts as true "and make the exhaustion determination on [plaintiff's] view of facts;" appellate review of results of first step is *de novo*). If the complaint is not

subject to dismissal through the first step, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082; *Whatley*, 2015 WL 5568465, at *6 (defendants' contention that plaintiff's exhibits were fabricated created a factual dispute that required explicit findings under the second Turner step; such findings are subject to review on appeal for clear error).[6]

*Turner* also established, however, that an inmate is not required to grieve a "breakdown in the grievance process" because the PLRA only requires that a prisoner exhaust his "available administrative remedies." *Id.* at 1083-84 ("[I]t is possible for retaliation or the threat of retaliation to make administrative remedies unavailable to an inmate."). In the context of retaliation or threatened retaliation, the *Turner* court concluded:

> We conclude that a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process;

---

[6] In *Whatley*, the Eleventh Circuit reversed the dismissal of a complaint for failure to exhaust because the record did not reflect whether the district court dismissed the case on the first or second step of *Turner*, and thus, the Court could not evaluate whether the district court's conclusions should be reviewed under the *de novo* standard of the first *Turner* step or the "clear error" standard of the second *Turner* step. 2015 WL 5568465, at *6.

*Case No: 5:15-cv-102-RH-GRJ*

> and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

*Id.* at 1085. To successfully excuse a failure to exhaust, courts have generally concluded an inmate must allege more than just threats of retaliation, but instead must allege both such threats of retaliation as well as the use of physical force against the inmate in response to the filing of grievances. *See, e.g., Hemphill v. New York*, 380 F.3d 680, 689 (2d Cir. 2004) (noting that if inmate was assaulted and threatened to keep him from complaining, exhaustion should be excused); *Kaba v. Stepp*, 458 F.3d 678, 684-86 (7th Cir. 2006) (exhaustion could be excused where prisoner was threatened with beating for filing grievances and threat was carried out).

In this case, the record reflects that Plaintiff did not successfully exhaust his claims through the appropriate grievance procedures required under the PLRA before filing his complaint. Considering the administrative review process requires an inmate to follow the proper steps all the way through filing an administrative appeal to satisfy the exhaustion requirement, the relevant analysis in this case concerns Plaintiff's administrative appeals, not his informal and formal grievances.

The exhibits attached to Defendants' motion to dismiss and the

documents attached to Plaintiff's response, reflect seven administrative appeals at issue: (1) 15-6-09659; (2) 15-6-10703; (3) 15-6-12951; (4) 15-6-17291; (5) 15-5-23172; (6) 15-6-29135; and (7) 15-6-29219.[7]

Applying the requisite *Turner* analysis, the factual allegations regarding Plaintiff's grievances in Defendants' motion to dismiss do not conflict with Plaintiff's response with respect to six of the administrative appeals: (1) 15-6-09659; (2) 15-6-10703; (3) 15-6-12951; (4) 15-6-17291; (5) 15-5-23172; and (6) 15-6-29135. As demonstrated by Defendants' and Plaintiff's exhibits, Plaintiff failed to properly exhaust his administrative remedies through these grievance appeals. These six appeals are not sufficient to properly exhaust the administrative remedies because all six appeals were returned without action for failure to follow proper grievance procedures. A grievance that is returned without action because the grievance was not in compliance with the grievance procedures is insufficient to show exhaustion of administrative remedies. *Joseph v. Gorman*, No. 4:11cv34-MP/CWS, 2012 WL 4089012, at *6 (N.D. Fla. Mar. 12, 2012) (noting that a response that returns the grievance without action

---

[7] Because the motion to dismiss deals solely with exhaustion under the PLRA, Plaintiff's argument that the Court may not consider Defendants' exhibits in ruling on the motion is wholly without merit. *See Bryant*, 530 F.3d at 1374, 1376; *Singleton*, 323 F. App'x at 785.

or finding it to be noncompliant does not exhaust administrative remedies); *Brown v. Mann*, No. 2:13-cv-94-FtM-29DNF, 2013 WL 610265, at *3 (M.D. Fla. Feb. 19, 2013) (plaintiff failed to properly exhaust his administrative remedies because each one was returned without action). Accordingly, none of the six administrative appeals Plaintiff filed are sufficient to properly exhaust Plaintiff's administrative remedies.

With regard to last administrative appeal, appeal number 15-6-29219, there appears to be a conflict as to whether this appeal was properly grieved. The appeal merely states that the administrative appeal is denied and fails to reference the underlying issue.

Plaintiff asserts in a sworn affidavit attached to his response that this specific grievance concerns the underlying allegations asserted in his amended complaint. There is further information on the record referencing this appeal. Notably, this is the specific grievance Plaintiff referenced in his Amended Motion for Temporary Restraining Order. In the motion Plaintiff admits that (at the time he filed the motion) he was still waiting for a response from Tallahassee. (ECF No. 67 at 2.)

Defendants simply say that the appeal does not evidence anything because the appeal response "does not include any supporting

documentation as to what the underlying grievance or complaint was, or indicate whether the grievance related to Plaintiff's claims in the instant suit, or whether it was filed prior to the filing of his suit." (ECF No. 70 at 3.)

Under *Turner*, to the extent that the factual allegations conflict, the Court must accept Plaintiff's version of the facts as true. 541 F.3d at 1082. Accordingly, the Court must consider administrative appeal number 15-6-29219 as a denied appeal on the merits, which grieved the issues asserted in Plaintiff's amended complaint. As required by *Turner*, the Court must therefore, ask, whether this grievance properly exhausted Plaintiff's administrative remedies.

Although grievance number 15-6-29219 may have fully exhausted Plaintiff's administrative remedies, the fundamental problem is that it did not properly do so until *after* Plaintiff initiated his lawsuit. The PLRA requires a prisoner to exhaust administrative remedies before suing about prison conditions. *Booth v. Churner*, 532 U.S. 731, 731 (2001). "[W]hen a state provides a grievance procedure for its prisoners . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000).

Here, while there is no evidence on this record as to the date Plaintiff filed his administrative appeal for grievance number 15-6-29219, the record discloses the appeal was denied on September 1, 2015. (ECF No. 67 at 19.)  Plaintiff filed this case on May 11, 2015, more than three months *before* the appeal was denied on September 1, 2015. Consequently, because the grievance process for grievance number 15-6-29219 was not completed until months after suit was filed, the grievance is insufficient to demonstrate exhaustion of administrative remedies before suit was filed. *Williams v. Barrow*, 559 F. App'x 979, 987 (11th Cir. 2014) (plaintiff failed to properly exhaust administrative remedies because his appeal was not denied until after he filed his complaint in the district court). Plaintiff's complaint, therefore, must be dismissed for failure to properly exhaust administrative remedies prior to filing suit.

There is no suggestion by Plaintiff that his failure to successfully and properly exhaust prior to filing suit should be excused because retaliation or threatened retaliation prevented him from properly exhausting prior to filing suit.

Moreover, to the extent that Plaintiff alleges he has filed more grievances and appeals but that they have "disappeared," these

statements are conclusory with no supporting dates, references or other credible information that would led credence to this statement.

## V.  Recommendation

For the foregoing reasons it is respectfully **RECOMMENDED** that Defendants Dr. Moses Izuegbu, M.D., Matthew McGuffin and Expedito Salvador's Motion to Dismiss, ECF No. 62, should be **GRANTED** and the case should be **DISMISSED** without prejudice for failure to exhaust administrative remedies.

**IN CHAMBERS** this 12th day of January, 2016.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**